UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

MOONBEAM CAPITAL INVESTMENTS,
LLC, ET AL.,

Plaintiffs,

Case No. 18-cv-12606

v.

UNITED STATES DISTRICT COURT
JUDGE GERSHWIN A. DRAIN

INTEGRATED CONSTRUCTION
SOLUTIONS, INC.,

Defendant.
_____/

## OPINION AND ORDER DENYING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT [#42]

### I. INTRODUCTION

On August 21, 2018, Plaintiffs Moonbeam Capital Investments, LLC and The Travelers Indemnity Company (together, the "Plaintiffs") filed the instant negligence and contractual indemnity claims against Defendant Integrated Construction Solutions, Inc. ("Defendant"). ECF No. 1.

Presently before the Court is Defendant's Motion for Summary Judgment, filed on August 30, 2019. ECF No. 42. Plaintiffs filed a Response on September 20, 2019. ECF No. 47. Defendant filed its Reply on October 3, 2019. ECF No. 51. A hearing on Defendant's Motion was scheduled for January 16, 2020. After reviewing the parties' briefs, the Court finds that no hearing on the Motion is

necessary. *See* E.D. Mich. LR 7.1(f)(2). For the reasons that follow, the Court will **DENY** Defendant's Motion for Summary Judgment [#42].

## II. FACTUAL BACKGROUND

Plaintiffs' claims stem from an accident at the Radisson Hotel on February 16, 2017. ECF No. 1, PageID.3. On that date, a mirror in the bathroom of Room 239 allegedly fell and landed on a capped water line. ECF No. 47, PageID.1501. This accident purportedly caused "severe water damage throughout the hotel," including personal property and business income losses. ECF No. 1, PageID.4.

Plaintiffs allege that Defendant was negligent in using a damaged cleat to install the mirror in Room 239; failing to properly seat the mirror on the cleat; failing to allow adequate clearance between the lighting fixtures and the mirror; failing to properly inspect the work performed to ensure that the mirror was properly seated to prevent it from falling over the exposed water line; amongst other things. ECF No. 1, PageID. 5–7.

### A. The Remodeling Project

Plaintiff Moonbeam ("Moonbeam")—the hotel owner—undertook a remodeling project and therefore hired Defendant to perform certain construction services, including renovating certain bathrooms. *Id.* at PageID.3. Moonbeam handled the furniture component of the project—specifically the purchasing and assembling of the guestrooms' new pieces. ECF No. 42, PageID.1117, 1118.

According to Lacey Ramsey, the hotel's engineer responsible for training his staff on how to assemble the furniture, his team was charged with building each room's luggage rack/bench, television stand, headboard, and bathroom vanity. ECF No. 47, PageID.1498. The vanities had to be assembled in the bathrooms due to their large size. *See id.* at PageID.1499; *see also* ECF No. 42, PageID.1118

Defendant was tasked with removing and reinstalling the guestroom's bathroom mirrors once new lighting fixtures and wallpaper were situated. ECF No. 47, PageID.1498. Defendant allegedly installed the mirrors back on the wall before it would install the light fixtures. ECF No. 42, PageID.1122. According to Defendant, Moonbeam remained "in control of what rooms were worked in and when [Defendant] got the rooms to work in." *Id.* at PageID.1117. Specifically, Moonbeam allegedly entered the work area regularly, especially in the evenings when Defendant left for the day. *Id.* Defendant purports that it thus "never had exclusive control of the hotel rooms." *Id.*

## B. The Accident in Room 239

On the morning of February 16, 2017, an exposed water line in Room 239's bathroom was severed, causing the release of water that ultimately damaged 3 floors of the hotel's south-wing. ECF No. 47, PageID.1495. None of the rooms in the south-wing were occupied at the time of the accident. *Id.* at PageID.1502.

Defendant asserts that Mick Hartman, a vinyl contractor, first discovered the claimed water loss and traced it to Room 239. ECF No. 42, PageID.1123. He allegedly noticed that there was no mirror hanging from the wall. *Id.* In its Response, though, Plaintiffs argue that Moonbeam employee Ndiame Diop first discovered the claimed water loss. ECF No. 47, PageID.1501. Mr. Diop testified that when he entered Room 239 shortly after 7:00 a.m. on the morning of the accident, he saw the bathroom mirror resting on the exposed, severed line. *Id.*; *see also* ECF No. 47-18, PageID.1781.

Room 239's mirror was purportedly on the wall for approximately ten days before the accident. ECF No. 42, PageID.1123. During this time, construction work continued in the hotel, which Defendant argues caused the rooms' walls to vibrate, including Room 239. *Id.* Defendant further denotes that Moonbeam was assembling furniture—including new, bulky vanity sets for the bathrooms—in the second-floor standard rooms during this time. *Id.* at PageID.1118. According to Mr. Sabbagh, Moonbeam would "take control of the rooms and work in them to assemble the furniture" once Defendant left for the day. ECF No. 42-3, PageID.1159.

## C. Post-Accident Inspections

On the afternoon of the accident, the mirror was allegedly moved from Room 239 to the hotel manager Mr. Gary Sabbagh's office. ECF No. 47, PageID.1502.

Defendant then hired an independent adjuster, John Burke to inspect and photograph both Room 239 and the fallen mirror. *Id.*

Defendant also retained investigator Paul Izzo. ECF No. 47, PageID.1502. Mr. Izzo inspected Room 239, the mirror, and the cleats on February 28, 2017. *Id.* He denoted that the mirror cleats showed "no evidence of damage or distress." ECF No. 47-21, PageID.1813. After Mr. Izzo's inspection, the mirror was moved to an evidence storage unit in Connecticut. ECF No. 47, PageID.1503.

During discovery, Plaintiffs retained expert witness Mr. Brian J. Tognetti. Plaintiffs and Mr. Tognetti posit that the mirror was not properly installed, thus allowing it to fall onto the exposed water line. ECF No. 47, PageID.1496. Mr. Tognetti examined the evidence in Connecticut and inspected the bathroom in Room 239, along with its lighting fixture. *Id.* at PageID.1496. While in the room, Mr. Tognetti purportedly "documented scrapes and gashes on the mirror and the wallpaper in Room 239 that are consistent with the mirror falling." *Id.* Based on the physical evidence and his own inspections, Mr. Tognetti opined that Defendant's poor workmanship and violations of the Michigan Rehabilitation Code for Existing Buildings ("MRCEB") caused the mirror to fall onto the exposed water line. *Id.*

### D. Defendant's Present Motion for Summary Judgment

Defendant now moves for summary judgment in this matter. First, Defendant asserts that Plaintiffs' negligence claim is based solely on speculation and conjecture

and thus they cannot prove causation. ECF No. 42, PageID.1136. Second, Defendant argues that Plaintiffs cannot show that they are entitled to indemnity. *Id.* at PageID.1140.

Plaintiffs opposed Defendant's Motion on September 20, 2019, arguing that the physical evidence, witness testimony, and their expert's opinion establish that its lawsuit is not speculative nor based on conjecture. ECF No. 47, PageID.1495. Further, Plaintiffs purport that there are "multiple issues of material fact that also prevent summary judgment" for the negligence and indemnity. *Id.* Defendant filed its Reply on October 3, 2019. ECF No. 51.

### III. LEGAL STANDARD

Federal Rule of Civil Procedure 56(a) empowers the court to render summary judgment forthwith "if the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." *See Redding v. St. Eward*, 241 F.3d 530, 532 (6th Cir. 2001). The Supreme Court has affirmed the court's use of summary judgment as an integral part of the fair and efficient administration of justice. The procedure is not a disfavored procedural shortcut. *Celotex Corp. v. Catrett*, 477 U.S. 317, 327 (1986); *see also Cox v. Kentucky Dept. of Transp.*, 53 F.3d 146, 149 (6th Cir. 1995).

The standard for determining whether summary judgment is appropriate is "'whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law.'" *Amway Distributors Benefits Ass'n v. Northfield Ins. Co.,* 323 F.3d 386, 390 (6th Cir. 2003) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986)). The evidence and all reasonable inferences must be construed in the light most favorable to the non-moving party. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *Redding*, 241 F.3d at 532 (6th Cir. 2001). "[T]he mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986) (emphasis in original); *see also National Satellite Sports, Inc. v. Eliadis, Inc.*, 253 F.3d 900, 907 (6th Cir. 2001).

If the movant establishes by use of the material specified in Rule 56(c) that there is no genuine issue of material fact and that it is entitled to judgment as a matter of law, the opposing party must come forward with "specific facts showing that there is a genuine issue for trial." *First Nat'l Bank v. Cities Serv. Co.*, 391 U.S. 253, 270 (1968); *see also McLean v. 988011 Ontario, Ltd.*, 224 F.3d 797, 800 (6th Cir. 2000). Mere allegations or denials in the non-movant's pleadings will not meet this burden, nor will a mere scintilla of evidence supporting the non-moving party. *Anderson*,

477 U.S. at 248, 252. Rather, there must be evidence on which a jury could reasonably find for the non-movant. *McLean*, 224 F.3d at 800 (citing *Anderson*, 477 U.S. at 252).

## IV. ANALYSIS

Defendant argues that summary judgment is appropriate pursuant to Federal Rule of Civil Procedure 56 for Plaintiffs' negligence and indemnity claims. The Court shall address each claim in turn.

### A. Negligence Claim

Plaintiffs' Complaint includes a negligence count against Defendant. ECF No. 1, PageID.5. Plaintiffs purport that as a direct, proximate result of Defendant's allegedly negligent acts and/or omissions in performing its construction work, they suffered losses and damages, including damage to real and personal property, as well as lost business and extra expense. *Id.* at PageID.7.

Plaintiffs must demonstrate four elements in order to establish a prima facie case of negligence: "(1) a duty owed by the defendant to the plaintiff, (2) a breach of that duty, (3) causation, and (4) damages." *Case v. Consumers Power Co.*, 615 N.W.2d 17 (Mich. 2000). "[W]hen the moving party can show either that an essential element of the nonmoving party's case is missing, or that the nonmoving party's evidence is insufficient to establish an element of its claim, summary disposition is properly granted." *Latham v. Nat'l Car Rental Sys., Inc.*, 608 N.W.2d

66 (Mich. App. 2000). "If the nonmoving party cannot muster sufficient evidence to make out its claim, a trial would be useless and the moving party is entitled to summary judgment as a matter of law." *Quinto v. Cross & Peters Co.*, 547 N.W.2d 314 (Mich. 1996) (quoting *Celotex v. Catrett*, 477 U.S. 317, 331 (1986).

In a negligence claim, proving causation is one of the more difficult steps. *See Davis v. Thornton*, 180 N.W.2d 11, 15 (Mich. 1970) ("Of all the elements necessary to support recovery in a tort action, causation is the most susceptible to summary determination for it usually amounts to a logical connection of cause to effect."). In the instant matter, Plaintiffs allege proximate cause in its negligence claim against Defendant. ECF No. 1, PageID.7.

### 1. Plaintiffs' Claim Is Not Based Solely on Speculation and Conjecture

The Michigan Supreme Court has explained that proximate causation cannot be based on mere speculation. *See, e.g.*, *Kaminski v. Grand Trunk W. R. Co.*, 79 N.W.2d 899 (Mich. 1956) (explaining that at a minimum, a causation theory must have some basis in established fact); *Jordan v. Whitting Corp.*, 240 N.W.2d 468 (Mich. 1976) (determining that a mere possibility that a defendant's negligence may have been the cause of an accident is insufficient to establish a causal link). In *Skinner v. Square D Co*, the Michigan Supreme Court held that the plaintiff must present "substantial evidence from which a jury may conclude that more likely than not, but for the defendant's conduct, the plaintiff's injuries would not have

occurred." 516 N.W.2d 475, 480 (Mich. 1994).  The court further explained that litigants "do not have any right to submit an evidentiary record to the jury that would allow the jury to do nothing more than guess." *Id.* at 484.

Here, Defendant asserts that its argument for summary disposition of Plaintiffs' negligence claim is controlled by *Skinner*.  Defendant argues that there are "numerous [] plausible explanations of what occurred" on the morning of the accident.  ECF No. 42, PageID.1136.  Specifically, Defendant asserts that one of Moonbeam's employees could have caused the line to sever while allegedly moving furniture into Room 239.  *Id.* at PageID.1137.

According to Defendant, the only certainty surrounding the accident is that the mirror was hanging on the wall "since at least February 9, 2017, and more likely for 10 days, without issue." ECF No. 42, PageID.1136.  Pete Hanewich, Defendant's president, testified that his employees completed their construction on the hotel's second floor as of February 9, 2018.  *See* ECF No. 42-4, PageID.1178.  These rooms were thus ready for furniture on that same day.  *Id.* at PageID.1193.

Defendant emphasizes that Moonbeam's employees moved furniture into Room 239 the night before the accident.  ECF No. 42, PageID.1137.  Defendant purports that one of Moonbeam's employees, while moving furniture, "could have stepped on or dropped furniture onto the pipe causing the break." *Id.*  Mr. Hanewich explained that when his employees left the hotel the afternoon before the accident,

there was no furniture in Room 239.  ECF No. 42-4, PageID.1199.  When he arrived the next morning around 8:00 a.m., though, there was furniture, including some mattresses in plastic packaging.  *Id.*; *see also* ECF No. 42-5, PageID.1204-05.  Thomas Olsen, a foreman for Defendant, corroborated this information in his own testimony; on the morning of the accident, he noticed chairs, mattresses, box springs, a chair, and a luggage rack in the room.  ECF No. 42-16, PageID.1289.

Ryan Olsen, another employee for Defendant ICS, also testified to finding furniture in Room 239 on the day of the accident.  ECF No. 42-10, PageID.1236 ("There was no furniture in the room itself, but when we showed up that morning [February 16], there was a bunch of stuff in the center of the room, and then there was a vanity on the outside of the hallway, but there was nothing in the bathroom.  No mirror.  I can't recall seeing one.").  He also hypothesized that "somebody kicked it [the pipe] or dropped something on it[.]"  *Id.* at PageID.1238.  However, Mr. Ryan Olsen clarified that he did not know for certain what caused the accident.  *Id.*

Defendant further relies on the fact that Paul Person, a maintenance employee for the hotel, may have assembled a bathroom vanity in Room 239 the night before the accident.  *See* ECF No. 42-6, PageID.1210, 1216.  Mr. Person testified that the vanities had to be assembled in the bathrooms due to their large size.  *Id.* at PageID.1216.  He also confirmed that whenever he assembled the vanities, he did so by himself.  *Id.* at PageID.1219.  Mr. Gary Sabbagh, general manager at the hotel,

explained that the vanities were "difficult to move [] into the bathroom by themselves" given their bulky shape. ECF No. 42-3, PageID.1163. Further, he testified that he believed "it would be very easy" for someone to knock the pipe or to bump into the mirror if they moved a vanity on their own. *Id.* He asserted that "it was impossible" to maneuver a vanity without two people. *Id.* at PageID.1158.

In light of the aforementioned testimony, Defendant purports that Plaintiffs cannot eliminate other possible causes of the loss and thus summary judgment is required. *See* ECF No. 42, PageID.1137. In their Response, however, Plaintiffs assert an alternative cause of the loss: that Defendant's "careless hanging of the mirror in Room 239 caused the mirror to fall and sever the exposed water line." ECF No. 47, PageID.1505. Plaintiffs rely on their expert witness Mr. Tognetti, physical evidence, and photographs to support their own theory of causation.

Mr. Tognetti was retained by Plaintiffs to conduct an inspection and render professional opinions on the cause of the water damage in the instant matter. He prepared an Expert Report on May 28, 2019. *See* ECF No. 47-24. There, he addressed his methodology in the case. He reviewed the photos from both parties' investigators and adjusters; the floorplan for guest rooms; Defendant's progress reports; and the reports of Defendant's insurance adjuster. *Id.* at PageID.1833–34.

Further, Mr. Tognetti visited the hotel to inspect Room 239 and other guest rooms. *Id.* at PageID.1834. While there, Mr. Tognetti measured the space and took

155 photographs. *Id.* He denoted that his visit occurred "well after" the February accident; however, he determined the visit was still "helpful to understand the contextual relationships among the spaces, the installed fixtures and furnishings within and adjacent to Room 239, as well as, the variability of the constructed conditions in similar, prototypical room styles within the hotel." *Id.* Mr. Tognetti also documented scrapes and gashes on the mirror "that are [allegedly] consistent with the mirror falling from the cleats." *See* ECF No. 47, PageID.1506. Additionally, he noted marred vinyl wallcovering and gypsum board in Room 239's bathroom. *See* ECF No. 47-24, PageID.1843.

The Court previously assessed this testimony when Defendants moved to strike Mr. Tognetti as an expert witness. ECF No. 60. The Court ultimately denied Defendant's Motion to Strike Plaintiffs' Expert Witness, finding that Mr. Tognetti's opinions are based on adequate facts and data as well as satisfy the Federal Rule of Civil Procedure 26 requirements. ECF No. 82. It is therefore appropriate for the Court to consider this testimony when deciding on the instant Motion.[1]

_____

[1] In its Reply, Defendant argues that Mr. Tognetti's "speculation" does not meet the standard set out in *Pomella v. Regency Coach Lines* since he purportedly "offers no testing of any kind to support [his] theory." ECF No. 51, PageID.2056. In *Pomella*, the district court opined that "an expert's opinion must be supported by 'more than subjective belief and unsupported speculation' and should be supported by 'good grounds,' based on what is known." *Id.* 899 F.Supp. 335, 342 (E.D. Mich. 1995) (internal citation omitted). In its Order Denying Defendant's Motion to Strike Plaintiffs' Expert Witness, this Court determined that Mr. Tognetti adequately inspected and examined evidence to support his expert opinion. ECF No. 82,

Plaintiffs rely on Mr. Tognetti's opinion that the mirror fell from the wall cleat onto the exposed water line because of Defendant's poor workmanship and violations of the MRCEB. *See* ECF No. 47-24, PageID.1835-37. Mr. Tognetti's Expert Report identifies that the lack of clearance between the mirror and the light fixture's screws prevented the mirror from being properly installed. In fact, Mr. Tognetti concluded that it was "physically impossible for the mirror's cleat system to have been properly installed (fully engaged)" based on the screws' position. *See* ECF No. 47-24, PageID.1837; *see also* ECF No. 47-5.

In a diagram, Mr. Tognetti depicts why the mirror cleat could not have interlocked into a wall cleat with the light fixture in place. ECF No. 47-28. This diagram also illustrates why the fixture's bottom screws could not have been installed if the mirror was hanging on the wall. *Id.*; *see also* ECF No. 47, PageID.1508.

The Sixth Circuit has held that if an affidavit of an expert contains meaningful analysis and reasoning, it will create a question of fact barring summary judgment. *See King v. Pennsylvania Life Ins. Co.*, 470 Fed. Appx. 439, 446 (6th Cir. 2012). Here, the Court agrees with Plaintiffs that Mr. Tognetti's expert opinion contains "meaningful analysis and reasoning." *See* ECF No. 47, PageID.1506. Additionally,

---

PageID.4499. Further, this Court found that Mr. Tognetti's Expert Report sufficiently describes how he arrived at his opinion. *Id.*

this Court previously determined that Mr. Tognetti's expert testimony is "sufficiently rooted in available evidence to make out a reasonable theory of causation." ECF No. 82, PageID.4497.

The Michigan Supreme Court has held that "any doubts about the connections between the causes and the effects [] should be resolved by the jury." *Davis v. Thornton*, 180 N.W.2d at 15. Here, the Court agrees with Plaintiffs in that they have provided "circumstantial evidence that permits a reasonable inference of causation." *See Skinner*, 516 N.W.2d at 480. The circumstantial evidence here—Mr. Tognetti's expert opinion, physical evidence, and witness testimony—affords a reliable basis from which reasonable minds could infer that more probably than not, but for Defendant's negligent hanging of the mirror in Room 239, the mirror would not have fallen on the exposed water line in Room 239. The Court therefore declines to summarily dismiss Plaintiffs' negligence claim on grounds that Plaintiffs "cannot eliminate other possible causes of the loss." *See* ECF No. 42, PageID.1137.

### 2. Multiple Issues of Material Facts Exist Relative to the Negligence Claim

The Court further finds that there are multiple issues of material fact relative to Plaintiffs' negligence claim. In their Response, Plaintiffs list six factual disputes amongst the parties. *See* ECF No. 47, PageID.1510.

First, the parties dispute who was the first person to discover the water loss on February 16, 2017. Defendant argues that Mr. Hartman was the first to discover

the water loss. When he arrived for work that morning, Mr. Hartman allegedly heard water coming from the second floor and eventually traced it to Room 239, where he discovered "water shooting out of the wall." ECF No. 42-11, PageID.1245.

Plaintiff alternatively purports that Ndiame Diop was the first to discover the severed water line. ECF No. 47, PageID.1510. Mr. Diop testified that when he entered the room shortly after 7:00 a.m. on the day of the accident, he saw the bathroom mirror resting on the exposed, severed pipe. ECF No. 47-18, PageID.1774. He took photos and video of the mirror resting on the pipe with his cellphone. *See* ECF No. 47-14; ECF No. 47-15.

Second, the parties dispute how Defendant installed the mirror in Room 239. Mr. T. Olsen testified that the mirror was installed before the light fixture. ECF No. 42-16, PageID.1284. Mr. Wilson, a construction worker for Defendant, also explained that it was standard practice to install the mirror before the light fixture. ECF No. 42-13, PageID.1256.

As explained above, Plaintiffs rely on Mr. Tognetti's opinion to dispute Defendant's claimed installation procedure. Mr. Tognetti determined that it would be impossible to install the light fixture with the mirror in place because the mirror's frame would prevent attachment of the fixture's bottom screws. ECF No. 47-24, PageID.1837.

Third, the parties dispute whether the door to Room 239 was secured the night before the accident. Defendant purports that its employees secured the guestroom doors at the end of each day. *See* ECF No. 42-16, PageID.1289; *see also* ECF No. 42-11, PageID.1244. Plaintiffs assert, however, that photos demonstrate that Room 239 had neither a knob nor a lock at the time of the accident. ECF No. 31. Further, Mr. Diop testified that the locks on the guestroom doors were removed on the second floor at the time of the accident. ECF No. 47-18, PageID.1777.

Fourth, the parties disagree about whether Moonbeam employees placed furniture in Room 239 the evening before the accident. Defendant asserts that one of Moonbeam's employees could have caused the pipe to sever while allegedly moving furniture. ECF No. 42, PageID.1137. Defendant emphasizes that Moonbeam handled the assembling of all furniture during the renovation project. *Id.* at PageID.1118; *see also* ECF No. 42-3, PageID.1160. Plaintiffs contest this causation theory by relying on Mr. Tognetti's analysis. ECF No. 47, PageID.1513-14. Mr. Tognetti opined that "neither a mattress nor a box spring would need to enter the bathroom to reach the guestroom." *See* ECF No. 5; ECF No. 24.

Fifth, there is a dispute about whether a Moonbeam employee severed the water line while installing a vanity in the bathroom of Room 239. Defendant relies on Mr. Hanewich's testimony to support this theory. Specifically, Mr. Hanewich hypothesized that a Moonbeam employee stepped on the pipe while installing the

bathroom vanity. *See* ECF No. 42-4, PageID.1187 ("In my opinion, somebody who damaged that pipe may not have even known that they had caused a water leak until much later, because the rupture in the pipe was inside the wall cavity."). Mr. R. Olsen testified that when he arrived to work on the morning of the accident, he saw a vanity in the hallway outside of Room 239. ECF No. 42-10, PageID.1236.

Plaintiffs contest Defendant's evidence. First, they assert that Mr. Person— the only employee working in the south-wing of the hotel the night before the accident—denied doing any work in Room 239's bathroom. *See* ECF No. 47-34, PageID.1929; *see also* ECF No. 47-13, PageID.1712. Next, Plaintiffs purport that "no vanity was found in the Room 239 bathroom when the water loss was discovered on February 16th." ECF No. 47, PageID.1514; *see also* ECF No. 47-35. Plaintiffs also emphasize inconsistent statements made in Mr. Person's deposition. ECF No. 47, PageID.1515. Mr. Person initially denied being in Room 239 the night before the accident. *See* ECF No. 47-13, PageID.1712. He then testified that he "might have" worked in the room. *Id.* at PageID.1734. Plaintiffs thus argue that these inconsistences may raise questions about Mr. Person's credibility, which is a matter that should be left to the jury. ECF No. 47, PageID.1516.

Finally, there is conflicting testimony about whether a Moonbeam employee intentionally bent the mirror cleat after the accident. Defendant argues that two of its employees, Mr. Hanewich and Mr. T. Olsen, noticed the mirror cleat was bent to

either a 90 or 45-degre angle after the accident. *See* ECF No. 42-4, PageID.1199; ECF No. 42-16, PageID.1291. According to Defendant, this bent was not present immediately after the accident; it was only discovered later in Mr. Sabbagh's office.

Plaintiffs purport that the mirror cleat depicted in multiple photos—taken by both parties' investigators—does not contain any 90-degree or 45-degree bends. ECF No. 47, PageID.1516. Further, Plaintiffs rely on Mr. Tognetti's inspection of the cleat in the evidence storage; he concluded that mirror cleat wasn't bent. *See* ECF No. 47-5, PageID.1653 ("Neither the wall cleat nor the mirror cleat I inspected contained any 45-degree or 90-degree bends.").

Plaintiffs conclude that these issues of material fact present a "sufficient disagreement" to require submission to a jury. ECF No. 47, PageID.1517. The Court agrees. The Sixth Circuit has determined that "the ultimate question" for a court when determining if summary judgment is appropriate is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Back v. Nestle USA, Inc.*, 694 F.3d 571, 575 (6th Cir. 2012) (internal citation omitted). Plaintiffs sufficiently demonstrate that the record contains enough evidence to establish that questions of material fact exist regarding causation.

Accordingly, the Court will deny summary judgment on Count I of Plaintiffs' Complaint.

### 3. The Court Need Not Analyze Plaintiffs' Negligence Claim Under *Res Ipsa Loquiter*

In its Motion, Defendant argues in the alternative that Plaintiffs cannot meet the requirements of *res ipsa loquiter* to survive summary disposition for the negligence count. ECF No. 42, PageID.1137. Despite suspecting that Plaintiffs "may attempt to argue that they can rely on *res ipsa loquitor*," Plaintiffs assert in their Response that the doctrine is "irrelevant" to the instant matter. ECF No. 47, PageID.1508. Indeed, Plaintiffs argue that they can prove the "actual occurrence" of Defendant's negligence, as explained above, and therefore they do not need to rely on *res ipsa loquitor. Id.* at PageID.1509. The Court thus need not address this alternative argument at this time.

### B. Indemnity Claim

Count II of Plaintiffs' Complaint brings a contractual indemnity claim against Defendant. ECF No. 1, PageID.8. Plaintiffs claim that they are entitled to contractual indemnity for the loss and damages which they suffered as a result of Defendant's alleged negligence. *Id.* at PageID.10.

In their Complaint, Plaintiffs included the agreement between Defendant and Moonbeam, which contains an express indemnification provision. That provision states, in relevant part, that Defendant agrees to indemnify Moonbeam "against any and all actions, causes of action, claims, demands, liabilities, losses, damages, injuries, costs and expenses … arising, in whole or in part, from … damage to, or

destruction of, property caused or occasioned directly or indirectly by [Defendant], its servants, agents, or employees, and any of its subcontractors, laborers or materialmen[.]" *Id.* at PageID.9.

Under Michigan law, courts apply the same contract construction principles that govern any other type of contract to indemnity contracts. *Ajax Paving Industries Inc. v. Vanopdenbosch Const. Co.*, 797 N.W.2d 704, 707 (Mich. App. 2010). "Where parties have expressly contracted with respect to the duty to indemnify, the extent of the duty must be determined from the language of the contract." *Grand Trunk W. R.R. Inc. v. Auto Warehousing Co.*, 576 N.W.2d 756, 763 (Mich. App. 2004); *Miller-Davis Co. v. Ahrens Const., Inc.*, 848 N.W.2d 95 (2014).

An express indemnity contract is construed "strictly against its drafter and against the indemnitee; the indemnitor's obligation to indemnify the indemnitee must be described clearly and unambiguously." *Skinner v. D–M–E Corp.,* 335 N.W.2d 90, 92 (Mich. App. 1983). Where language in an indemnity agreement is "clear and unambiguous," the interpretation is limited to the words used by the parties. *Burkhardt v. Bailey,* 680 N.W.2d 453, 464 (Mich. App. 2004).

In its Motion, Defendant argues that Plaintiffs cannot carry their burden to demonstrate that Moonbeam is entitled to indemnity. ECF No. 42, PageID.1139–40. Specifically, Defendant purports that its employees could not have caused the accident since Moonbeam "had people working in [Room 239] at the time of the loss

moving furniture into the room." *Id.* at PageID.1140. Thus, Defendant argues it is entitled to judgment as a matter of law. *Id.*

In the previous section, though, the Court determined that there is a genuine issue as to who remained in possession and control of Room 239. Specifically, the parties dispute whether the door to Room 239 was secured the night before the accident; whether Moonbeam employees placed furniture in Room 239 the night before the accident; and whether a Moonbeam employee severed the water line while allegedly installing a bathroom vanity in Room 239.

Plaintiffs argue that Defendant's employees violated the MRCEB by allegedly improperly hanging the mirror in Room 239. ECF No. 47, PageID.1517. They purport that such a violation falls under the indemnity clause of the parties' Agreement for Construction Services (ECF No. 47-2). *Id.* Specifically, the indemnity clause states that Defendant agrees to indemnity Moonbeam for "any alleged or actual violation of any applicable Laws." ECF No. 47-2, PageID.1531.

Plaintiffs rely on Mr. Tognetti's Expert Report to demonstrate that Defendant violated the MRCEB. In the Expert Report, Mr. Tognetti explained that the work performed by Defendant would be subject to compliance of the MRCEB. ECF No. 47-24, PageID.1836. Further, he opined that Defendant's allegedly inadequate installation of the mirror without proper engagement into its cleat system created a

"dangerous or unsafe condition, as defined in Section 202, which was not compliant with Sections 606.1, 701.2, 801.2, and 1501.2" of the MRCEB.  *Id.*

Defendant contests that Mr. Tognetti's cited sections "state nothing more than a requirement that a project is safe."  ECF No. 51, PageID.2061.  Further, Defendant asserts that if the MRCEB applies to "anyone, the codes apply to Moonbeam, who remained in complete possession of the hotel during the project, especially at the time of the loss."  *Id.*  They emphasize in their Reply that Mr. Tognetti testified that the MRCEB provisions would apply to all work being done in the guestrooms.  ECF No. 51-5, PageID.2103 ("Yes, the provisions, the intent of the provisions would apply to anyone performing the work.").

Additionally, Defendant argues that "there is no evidence that ICS did anything wrong" regarding the mirror's installation.  ECF No. 51, PageID.2061.  However, the Court determined in the previous section that there is a genuine issue as to how Defendant installed the mirror in Room 239.  The Court therefore finds that questions of material fact exist as to whether Defendant violated "any applicable Law"—specifically the MRCEB—when installing the mirror in Room 239.

While it is true that indemnity contracts are construed strictly against the indemnitee, *Skinner,* 335 N.W.2d at 92, the Court concludes that issues of material fact remain as to whether Defendant violated the MRCEB which prevent the

summary dismissal of Plaintiffs' indemnity claim at this time. Accordingly, the Court will also deny summary judgment on Count II of Plaintiffs' Complaint.

## V. CONCLUSION

For the reasons articulated above, the Court will **DENY** Defendant's Motion for Summary Judgment [#27].

IT IS SO ORDERED.

Dated:        January 13, 2020

s/Gershwin A. Drain
HON. GERSHWIN A. DRAIN
United States District Court Judge

CERTIFICATE OF SERVICE
Copies of this Order were served upon attorneys of record on
January 13, 2020, by electronic and/or ordinary mail.
/s/ Teresa McGovern
Case Manager